# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION

| | |
|---|---|
| **DAVID MIMS and DONNA MIMS,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Case No. 1:12-CV-00244-VEH** |
| **v.** ) | |
| ) | |
| **WAL-MART STORES, INC.;** ) | |
| **BLITZ U.S.A., INC.; et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## WAL-MART STORES INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR EXTENSION OF DEADLINES AND MOTION FOR SCHEDULING CONFERENCE

COMES NOW, Wal-Mart Stores, Inc. ("Wal-Mart"), and files its Response to Plaintiffs' Motion for Extension of Deadlines and Motion for Scheduling Conference.

## Introduction

Plaintiffs have chosen to file a twenty-four page brief over a very simple issue on which the Defendant already agrees.  Plaintiffs seek an extension of the deadlines in this case.  Even prior to Plaintiffs filing their brief, Defendant had already agreed to an extension---assuming it would apply to all deadlines in the case.  Plaintiffs apparently wanted to file a brief in an attempt to portray Defendant in an unflattering light regarding document production.  As will be shown herein, Defendant has gone far beyond what it is required to do in assisting Plaintiffs with

10730529

Defendant's document production.  In response to Plaintiffs' discovery requests, Defendant was required to produce many documents--as Plaintiffs should have expected.  Now, Plaintiffs incorrectly complain that they cannot adequately search the produced documents and thus need an extension---an extension to which Defendant has already agreed.

While Plaintiffs go into great detail in their brief (and attach numerous exhibits) about many conversations between the parties, Defendant will attempt to spare the Court the necessity of reviewing all of the material attached to Plaintiffs' brief.  As can be seen in recent emails between counsel for Plaintiffs and counsel for Defendant (attached as Ex. A), counsel for Defendant agreed to an extension of deadlines, but not the original motion that Plaintiffs proposed, which like Plaintiffs' current brief, made unnecessary and incorrect assertions regarding Wal-Mart's document production.  Having already agreed to an extension, Wal-Mart would propose, as Plaintiffs have, that a Rule 16 scheduling conference take place during which an extension of all deadlines can be discussed.  Because, however, Plaintiffs' brief attempts to point the finger at Wal-Mart for the needed extension, Defendant is compelled to at least set the record straight on some of the claims made by Plaintiffs in their brief.

## **Wal-Mart's Document Production**

The product at issue in this case is a portable plastic consumer gas can that was made by Blitz U.S.A., Inc. in Miami, Oklahoma.  Wal-Mart was not the manufacturer of the gas can at issue here.  Blitz was a well-known, longstanding manufacturer of quality portable consumer gas containers.  In fact, Blitz was the industry leader in portable consumer gas cans for over 20 years, controlling 75% of the market and selling roughly 10 million gas cans per year in the United States alone.  Wal-Mart itself has been in business since 1962 selling gas cans, and it has sold 23 million Blitz gas cans since 2005.  Wal-Mart relied on Blitz, a domestic manufacturer, to make safe portable consumer gas cans that complied with all government regulations. Wal-Mart also justifiably relied on Blitz, a domestic manufacturer, to conduct any necessary testing to ensure the safety and compliance of Blitz portable consumer gas cans.

Gas can cases are rare considering (i) the vast number of portable consumer gas cans sold each year, and (ii) that these types of containers are intended for use and reuse by consumers for many years.  Plaintiffs have been filing product liability lawsuits against Blitz and other gas can manufacturers for roughly 20 years.

In 2005, Wal-Mart was included for the first time[1] as a defendant in one of the Blitz lawsuits.  Under the indemnity provision in Wal-Mart's Supplier Agreement with its domestic manufacturer, Blitz provided Wal-Mart with a defense of these product-liability lawsuits.  Blitz, however, was recently forced into bankruptcy, and since that time, Wal-Mart has engaged in costly projects to respond to discovery requests in gas can litigation cases.  In an effort to avoid the discovery feuds that had become commonplace between plaintiffs and Blitz, Wal-Mart has worked extremely hard to provide a comprehensive database of documents.

Wal-Mart has spent considerable time, effort, and resources to ensure the documents it produced were properly identified, collected, searched and then placed in an electronically accessible and user friendly form.  From prior cases involving an allegedly defective Blitz portable plastic consumer gas can, Wal-Mart was able to identify the sources of potentially responsive documents.  It determined that a majority of the potentially responsive documents would be possessed by custodians that worked either as Buyers or as Associates on the merchandising teams for Wal-mart, Sam's Club, or Walmart.com.

---

[1] In the 12 years before 2005, Wal-Mart had been named in only six different lawsuits involving portable consumer gasoline containers, all of which were manufactured by entities other than Blitz.

Wal-Mart has produced to Plaintiffs' counsel a "master set" of documents, consisting of relevant data from its buyer and merchandising documents, merchant buyer training documents, insurance and supplier matrix documents, and product safety documents. Wal-Mart identified potential custodians and then conducted interviews to determine which of those custodians might have potentially responsive electronically stored information. From the data collected, Wal-Mart culled all non-relevant and non-responsive documents that had nothing to do with this litigation by using relevant search terms.

The product of this search was "deNISTed,"[2] and "de-duplicated"[3] across custodians, yielding a fully-searchable database with well-over 50,000 relevant buyer/ merchandising, insurance, training, and product safety documents.  Wal-Mart then employed a team of highly-trained, experienced Discovery Management Consultants to review and categorize the documents into categories, each with specific subcategories, dealing specifically with the issues of this case.   For instance, these categories include: portable plastic consumer gas can models; product safety/testing; sales, etc.  Thus, the documents were produced to Plaintiffs' counsel allowing them to perform simultaneous precision searches via document content and metadata indexing for all the document types provided by bates

---

[2] De-NISTing is a technique used in e-discovery to reduce the number of files requiring review by excluding standard components of the computer's operating system such as Windows screen saver images, document templates, clip art, etc.

[3] De-Duplication is the process of eliminating redundant data.

number and/or range, "cc," "bcc," subject, sent date, date received, attachment count, attachment level, message folder, file path, file name, file size, document type, application, date created, date last modified, source, MD5 hash value, time zone, and tagging.

As noted above and as conceded by Plaintiffs in their Motion, all responsive, non-privileged documents were provided in both native format and .tiff format imaged production sets with spreadsheets also provided in native format which contain associated content search renderable .txt files, metadata field indexes, and ancillary load files that can be converted for any system requirements and successful data loading into all known litigation software platforms. Standard metadata fields for each document were included in the load files. Additionally, all potentially relevant topics found in Plaintiffs' Requests for Production of Documents were provided in the metadata field entitled "tagging"; which provides Plaintiffs' counsel's litigation software the ability to view and query the subject/matter-related information identified for each specific document.

In short, Wal-Mart has produced thousands of relevant documents in a usable form, electronically searchable, and paired with essential metadata so that Plaintiffs' counsel have the identical ability to access, search, and display the documents as Wal-Mart has. Since Blitz's filing for bankruptcy protection in

November 2011, Wal-Mart has so far spent over $649,000 on its document production in these cases.

Plaintiffs spend much of their brief discussing the issue of Plaintiffs' request that the Wal-Mart documents be produced in both native and .tiff format. Wal-Mart initially refused to agree to a native production for a variety of legitimate reasons, most of which are outlined in Plaintiffs' own brief. After further reflection, and after certain assurances by Plaintiffs' counsel, Wal-Mart agreed to produce the documents in both native and .tiff formats. But, while Wal-Mart had already produced documents in other cases in a .tiff format it had not done so in native format. Wal-Mart had to ask its ESI vendor to reformat the production in a native format, which necessarily took some additional time. After the documents were produced in both .tiff and native formats, Plaintiffs' counsel complained about certain download difficulties and allegedly corrupt files.

In light of these assertions, Wal-Mart reproduced via DVDs the entirety of the .tiff formatted electronic production set and certain of those native productions with which Plaintiffs' counsel was experiencing difficulties. On October 15, 2012, Wal-Mart's discovery counsel's office instructed Plaintiffs' counsel's office with regard to the data file set up and metadata index loading; which can be effectively loaded into any software review platform. See Ex. B. But, the review platform is the Plaintiffs' responsibility not Wal-Mart's.

Wal-Mart's electronic discovery vendor has provided every likely load file type needed for successful data loading into every known litigation software platform: .dii, DAT, LFP and OPT file formats, any or all of which can be converted for any system requirements. Wal-Mart has provided all ancillary load files containing searchable textual content with all relevant system metadata. It is not unusual, and often required, that ESI received requires system formatting and conversion upon receipt. Once again, this is Plaintiffs' responsibility not Wal-Mart's.

Pursuant to Fed.R.Civ.P. §§ 26(f) and Rule 34(b), Wal-Mart has produced in a good faith effort at their expense all responsive relevant electronically stored information in two alternative forms of production, both native and .tiff format with all elements of associated metadata. The native production sets are labeled and identified by file bates stamp number (which identifying numbers also correlate to the non-native .tiff file format provided.).

The production of the electronically stored information in this matter satisfies the goals as set forth in Sedona Principle 12: the production is in usable form, electronically searchable and paired with essential metadata. The Sedona Principles (Second Edition): *Best Practices Recommendations & Principles for Addressing Electronic Document Production, Principle 12, at i* (June 2007), available at http://www.thesedonaconference.org. Plaintiffs' counsel's office has

the identical ability to access, search and display the information as Defendant Wal-Mart.  Wal-Mart has, and continues to produce in a good faith effort, the electronically stored information in a usable format and has also produced the same information in both native and non-native formats.

Wal-Mart has made and continues to make a good faith effort to resolve all disputes regarding the ESI discovery sent, including the primary requisite technical knowledge needed for successful use and review of the documents responsive in this matter.

## <u>Conclusion</u>

While Plaintiffs argue that they cannot yet identify expert witnesses because of alleged problems with Wal-Mart's document production, the fact is that in virtually all of the currently pending "gas can" cases the stable of Plaintiffs' experts is virtually identical.  These cases involve highly-technical scientific issues, and there are only a few experts used by plaintiffs nationwide.  Defendant anticipates that eventually Plaintiffs will name the same experts that are used against it almost universally.  Despite the fact that Plaintiffs most likely will name the same experts Wal-Mart is seeing named in other cases, Wal-Mart does not oppose an extension of deadlines so long as all deadlines are extended accordingly. Wal-Mart agrees with Plaintiffs that a Rule 16 scheduling conference would be

beneficial to address the issues raised herein.

This the 26th day of November, 2012.

Respectfully submitted,

WAL-MART STORES, INC.

BY: /s/ Stacey L. Strain_____
     STACEY L. STRAIN (ASB-1733T77S)

OF COUNSEL:
STACEY L. STRAIN (ASB-1733T77S)
HUBBARD, MITCHELL, WILLIAMS & STRAIN, PLLC
1062 Highland Colony Parkway, Suite 222
Ridgeland, Mississippi 39157
Post Office Box 13309
Jackson, Mississippi 39236
Telephone: 601-707-3533
Facsimile: 601-898-2726
strain@hubbardmitchell.com

## <u>CERTIFICATE OF SERVICE</u>

I, Stacey L. Strain, as attorney for Defendant Wal-Mart Stores, Inc. do hereby certify that I have this day served a true and correct copy of the above and foregoing by electronic mail transmission to:

Glenda G. Cochran
Cochran & Associates
310 North 21st Street North, Suite 500
Birmingham, Alabama 35203
gc@glendacochran.com
Attorney for Plaintiffs

Larry B. Childs
Brian J. Malcom
1901 Sixth Avenue N., Suite 1400
Birmingham, Alabama 35203
Attorneys for the Kinderhook Defendants

Timothy P. Harkness
Pamila Gudkov
601 Lexington Avenue
New York, New York 10022

This the 26th day of November, 2012.

/s/ Stacey L. Strain_____
STACEY L. STRAIN